UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

IN RE:

MICHAEL J. TOMPKINS,

    Debtor.
_____/

JAMES W. BOYD, Trustee,

    Plaintiff,

v.

JAMES A. PETRIE, TRUSTEE OF
THE JAMES A. PETRIE TRUST,

    Defendant.
_____/

Bankruptcy Court Case No. 06-05983
Chapter 7

Adversary Proceeding No. 07-80373

Case No. 1:09-CV-734

HON. GORDON J. QUIST

# **OPINION**

## **Introduction**

To help facilitate his daughter's divorce from Michael J. Tompkins ("Debtor"), James A. Petrie ("Defendant"), as trustee of the James A. Petrie Trust, agreed to accept Debtor and Cheryl A. Petrie-Tompkins' marital residence by quitclaim deed in exchange for the release of a $123,000 loan Debtor and his ex-wife owed the Petrie Trust. Five months after entry of the divorce judgment, Debtor filed a bankruptcy petition. Plaintiff, James W. Boyd (the "Trustee"), appeals the bankruptcy court's decision dismissing the Trustee's avoidance action on the transfer of the marital residence. For the reasons stated below, the Court will vacate the bankruptcy court's order and remand the case for further proceedings consistent with this Opinion.

**Facts and Procedural History**

On August 8, 2005, Shirley Petrie, the wife of Defendant, James Petrie, loaned $123,000 to Debtor and his wife, Cheryl Petrie-Tompkins, who is Defendant's daughter. In exchange for the $123,000 loan, Defendant received a document entitled "Mortgage Note." The "Mortgage Note" contained a legal description of the property and a repayment period of fifteen years at three percent interest, which equated to monthly payments of $849.42. (Def.'s Resp. Br. at 7.) The "Mortgage Note" was not recorded because it was not notarized. (*Id.*) From September until December 2005, Debtor and Ms. Petrie-Tompkins made four timely payments on the note. In December 2005, Ms. Petrie-Tompkins filed for a divorce.

As in the present bankruptcy appeal, the marital residence (the "Lord Road Property") was the primary issue in the divorce proceedings. On March 23, 2006, Shirley Petrie co-signed a $5,000 loan with Debtor to pay-off an outstanding home equity line of credit on the marital residence. Seventeen days later, the bank released the mortgage on the home equity line of credit. In June 2006, as part of the divorce agreement, Debtor and Ms. Petrie-Tompkins transferred their interest in the Lord Road Property to the Petrie Trust by quitclaim deed in exchange for Defendant's cancellation of the $123,000 loan (the "Transfer"). On June 28, 2006, the state court entered a judgment of divorce. Five months later, on November 21, 2006, Debtor filed his Chapter Seven bankruptcy petition and claimed federal exemptions under 11 U.S.C. § 522(d).

The bankruptcy court held a bench trial on March 24, 2009. On the morning of trial, the parties stipulated to the dismissal with prejudice of the Trustee's fraudulent conveyance counts under 11 U.S.C. § 544 and the Uniform Fraudulent Transfer Act. The only issue tried, and the only issue for appeal, is whether the Transfer of the Lord Road Property to the Petrie Trust was avoidable

as a preference under 11 U.S.C. § 547(b) and recoverable under 11 U.S.C. § 550. The Trustee did not testify at the trial.

At the conclusion of the trial, the bankruptcy court issued an oral opinion finding that the Trustee failed to establish that Debtor held a separate, individual interest in the property on the date of the Transfer. The bankruptcy court noted that Debtor and Cheryl Petrie-Tompkins owned the Lord Road Property as tenants by the entireties prior to their divorce and that the Lord Road Property was transferred to the Petrie Trust prior to the entry of their judgment of divorce. (Bankr. Tr. at 122.)

In a supplemental opinion entered on March 26, 2009, the bankruptcy court clarified its oral opinion. The bankruptcy court stated that the oral opinion fell short of expressing the court's "conclusion that the Trustee failed to establish diminution of the estate, a somewhat distinct, extra-statutory element of any preference claim." (Bankr. Ct.'s Supplemental Op. at 2.) The bankruptcy court reasoned that the Transfer did not result in a diminution of the estate because of the entireties nature of the Lord Road Property on the Transfer date. Additionally, the bankruptcy court found that Defendant's cancellation of the $123,000 loan and Debtor and Ms. Petrie-Tompkins' transfer of the Lord Road Property to the Petrie Trust were designed to facilitate the divorce. Finally, the bankruptcy court held that the Trustee offered no competent evidence that "Defendant fared better as a result of the Transfer than he would have in Chapter 7 had the Transfer not occurred." (*Id.* at 5.)

The Trustee moved to amend the bankruptcy court's findings of fact and conclusions of law under Rule 52, arguing that (1) a transfer of entireties property can be avoided under 11 U.S.C. § 547, and (2) the bankruptcy court should take judicial notice of the claims register and Debtor's

3

schedules. On June 7, 2009, the bankruptcy court entered an order denying the motion to amend. The bankruptcy court specifically rejected the reliability and persuasiveness of Debtor's schedules. (Bankr. Ct.'s Rule 52 Op. at 4.) The court noted that "Schedules are sometimes incomplete and inaccurate, and the Trustee's counsel elicited no testimony from either Debtor (who appeared at trial) or the Trustee (who did not) regarding the statements contained therein." (*Id.*) The bankruptcy court further stated that the "court was not persuaded that the hearsay statements contained in the schedules, without more, were competent evidence of the universe of assets, asset values, allowable claims, or for that matter, existence of joint debt." (*Id.* at 4-5.) After citing a Chase credit card disparity as an example of insufficient evidence, the bankruptcy court held that "the schedules, even considering the claims register, do not establish that any joint claims (other than the Defendant's claim) would share in the entireties property." (*Id.* at 7.) Therefore, the bankruptcy court held that "Without testimony from the Trustee or other knowledgeable witness regarding the claims . . . the court had insufficient evidence to find the Defendant, a joint creditor, fared better as a result of the transfer than he would have in a hypothetical Chapter 7 proceeding." (*Id.* at 5-6.) The Trustee subsequently appealed the bankruptcy court's rulings to this Court.

**Standard of Review**

In reviewing the bankruptcy court's decision that the Trustee failed to show diminution of the estate under § 547, this Court applies a clearly erroneous standard to the bankruptcy court's findings of fact and a *de novo* standard of review to its conclusions of law. *Parker v. Goodman (In re Parker)*, 499 F.3d 616, 620 (6th Cir. 2007).

**Discussion**

Under the Bankruptcy Code, all legal and equitable interests of the debtor, including property held as a tenant by the entirety, become part of the bankruptcy estate. *See* 11 U.S.C. § 541. When

4

a debtor claims the federal exemptions under § 522(d), property held as a tenant by the entireties is not protected. *See Shapiro v. First Franklin Fin. Corp. (In re Rechis)*, 339 B.R. 643, 647 (Bankr. E.D. Mich. 2006) (stating that "[b]ecause Congress specifically addressed the entireties exemption in § 522(b)(2) [now § 522(b)(3)], there can be no conclusion but that the § 522(b)(1) [now § 522(b)(2)] 'federal' exemptions found in § 522(d) do not protect a tenancy by entireties."). Instead, § 522(d) permits a debtor to claim an exemption of $20,200 for real and personal property that the debtor uses as a residence. *See* 11 U.S.C. § 522(d)(1). Thus, when a debtor has an interest in entireties property and selects the federal exemptions, the entireties property is analyzed as if it was a tenancy in common with the debtor's interest in that tenancy in common subject to the claims of the debtor's individual and joint creditors. *See In re Raynard*, 327 B.R. 623, 637 (Bankr. W.D. Mich. 2005); *see also In re Rechis*, 339 B.R. at 647 (holding that a debtor's interest in entireties property comes into the estate for the benefit of all creditors where the debtor elects the federal exemptions).

The issue in this case is whether Debtor and his ex-wife's Transfer of entireties property to Defendant to facilitate their divorce is avoidable as a preference under § 547(b).[1] The Court must analyze what actually happened pre-petition to escape the web of hypotheticals the parties wove in

---

[1] 11 U.S.C. § 547(b) provides:
Except as provided in subsections (c) and (i) of this section, the trustee may avoid any transfer of an interest of the debtor in property—
 (1) to or for the benefit of a creditor;
 (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
 (3) made while the debtor was insolvent;
 (4) made—
   (A) on or within 90 days before the date of the filing of the petition; or
   (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and
 (5) that enables such creditor to receive more than such creditor would receive if—
   (A) the case were a case under chapter 7 of this title [11 USCS §§ 701 et seq.];
   (B) the transfer had not been made; and
   (C) such creditor received payment of such debt to the extent provided by the provisions of this title [11 USCS §§ 101 et seq.].

5

their briefs. *See Lasich v. Wickstrom (In re Wickstrom)*, 113 B.R. 339, 346 (Bankr. W.D. Mich. 1990) (stating that "[c]onveyances of property have legal ramifications. This court therefore must analyze the law in accordance with what happened rather than what might have happened."). Here, a divorce judgment for Debtor and his ex-wife was entered on June 28, 2006. Consequently, if the Trustee satisfies the elements of § 547(b) and avoids the Transfer, then Debtor and his ex-wife will have equal interests in the Lord Road Property as tenants in common because the divorce decree destroyed the tenancy by the entireties. *See* M.C.L. § 552.102. Therefore, if the Trustee satisfies the elements of § 547(b) by a preponderance of the evidence, the Transfer will be avoided as a preference and Debtor's interest in the Lord Road Property, held as a tenant in common, can be subjected to the claims of all Debtor's creditors. *See Olson v. Parker (In re Parker)*, 395 B.R. 12, 17 (Bankr. W.D. Mich. 2008) (stating that a debtor's undivided interest in property held as a tenant in common is administered for the benefit of the estate's creditors).

### 1. Hypothetical Liquidation under § 547(b)(5)

The bankruptcy court held that there was no credible evidence to show diminution of the estate under § 547(b)(5). The Trustee argues that the bankruptcy estate was diminished by the Transfer. First, the Trustee states that Defendant's and Cheryl Petrie-Tompkins' testimony showed that the Lord Road Property was worth $122,616, which is the amount of the debt satisfied by the Transfer. (Pl.'s Appeal Br. at 11.) Second, the Trustee states that he "crunched the numbers in the schedules admitted into evidence as Exhibit 7 and demonstrated clearly that the Defendant would only have received about a 40% payment based on the claims and available assets in the schedules." (*Id.*) Finally, the Trustee argues that a debtor's schedules are generally sufficient evidence of the result of the hypothetical liquidation required by § 547(b)(5). (Pl.'s Appeal Br. at 12 & n.5.)

The Trustee's argument regarding the gravitas the Court should accord Debtor's schedules overstates the import of the cases the Trustee cites. The Trustee portrays case specific holdings that reference a debtor's schedules in a court's hypothetical liquidation analysis as a broad rule that a debtor's schedules are generally sufficient evidence to satisfy § 547(b)(5). (Pl.'s Appeal Br. at 12 & n.5.) In reality, the cited cases merely support the proposition that bankruptcy schedules are just one form of evidence under § 547(b)(5). *See, e.g.*, *In re Flooring Am., Inc.*, 302 B.R. 394, 403 (Bankr. N.D. Ga. 2003) (stating that affidavits of financial officers, bankruptcy schedules, or prior findings of insolvency can be used to satisfy § 547(b)(5)); *see also In re David Jones Builder, Inc.*, 129 B.R. 682, 694 (Bankr. S.D. Fla. 1991) (stating that the Trustee's testimony was the only evidence presented to satisfy the hypothetical liquidation element of § 547(b)(5), and then citing the debtor's schedules as additional support for the court's conclusion).

At trial, the Trustee relied solely on the claims register and Debtor's schedules to prove Defendant received more as a result of the Transfer than Defendant would have received in a hypothetical liquidation. The bankruptcy court found that the schedules and claims register, absent supporting testimony, were not credible due to inconsistencies within the claims.[2] (Bankr. Ct.'s Supplemental Op. at 6-7.)

In a subsequent opinion on the Trustee's Rule 52 motion to amend, the bankruptcy court provided an illustrative example of this credibility gap. The bankruptcy court stated that in post-trial

---

[2]Contrary to the Trustee's argument, *In re Tenna Corporation*, 801 F.2d 819 (6th Cir. 1986), does not preclude a bankruptcy court from reviewing the validity of the claims on a debtor's schedules or the credibility of those schedules. *Tenna* held that, except for administrative expenses, a bankruptcy court can only consider claims that arose prior to the date the bankruptcy petition was filed when conducting a hypothetical liquidation analysis. *Tenna*, 801 F.2d at 823. The Sixth Circuit focused on the appropriate time frame for the analysis, not the propriety of validity and credibility determinations. *See id*. By holding that the bankruptcy court must conduct the § 547(b)(5) analysis as of the date of the petition, the Court in *Tenna* sought to prevent trustee manipulation of the estate, a policy which supports a review of the claims and schedules in this case. *Id*.

briefs, the Trustee referenced joint debt from Chase Cardmember Services, which the bankruptcy court had to presume meant the claim on Schedule F. (Bankr. Ct.'s Rule 52 Op. at 6.) As the bankruptcy court noted, however, the only claim Chase filed related to a business debt for Debtor's sporting goods store. (*Id.*) Absent testimony on the validity or nature of this claim, the bankruptcy court held this claim did not establish "that any joint claims (other than the Defendant's claim) would share in the entireties property." (*Id.* at 7.) The bankruptcy court did not cite any other specific examples of invalid or inaccurate claims in its opinions.

The bankruptcy court's rulings did not address the issue of whether the entireties property retained all of its attributes regardless of the type of exemption Debtor chose when filing his bankruptcy petition. As stated above, when a debtor claims the federal exemptions under § 522(d), property held as a tenant by the entirety is not protected. *See Shapiro v. First Franklin Fin. Corp. (In re Rechis)*, 339 B.R. 643, 647 (Bankr. E.D. Mich. 2006). Thus, while the validity of the claims and the credibility of Debtor's schedules are important considerations, whether the Chase Cardmember Services claim is for individual or joint debt is irrelevant in this particular context. The proper § 547(b)(5) consideration is whether the Transfer caused Defendant to receive more than Defendant would have received in a hypothetical liquidation absent the Transfer. The bankruptcy court must consider all the claims against the estate, not just the joint claims, because Debtor chose the federal exemptions. The bankruptcy court did not find the schedules or claims register persuasive, (Bankr. Ct.'s Rule 52 Op. at 4-5); however, the bankruptcy court did not cite any specific example of inaccurate, incomplete, or invalid claims other than the Chase debt being individual or joint. This Court believes that the bankruptcy court's statement regarding the Chase debt's joint or individual character was beside the point. To be clear, the Court agrees the Chase example questions the existence of joint debt, but this is insufficient to impugn the credibility of all

8

the individual claims in Debtor's schedules, and the existence of individual claims affects each creditor's share of the estate in a hypothetical liquidation.

 2. **The Other Elements of § 547(b)**

The bankruptcy court did not rule on the other elements of § 547(b). To preserve the bankruptcy court's role as the finder of fact, this Court declines to rule on these elements. The Court notes, however, that the Trustee's Exhibit 14, which is Debtor's balance sheet on June 30, 2006, may not support a finding of insolvency on the date of the Transfer. Testimony from the trial shows that Debtor's assets on the date of the Transfer are properly valued at $72,032 – not $34,609.50 – after accounting for the $40,000 valuation of Debtor's business and the $0 valuation of the John Deere skid steer. (Bankr. Tr. 79-80, 83-85.) The Trustee claims that, on the date of the Transfer, Debtor had liabilities valued at $81,795.29. (Pl.'s Trial Ex. 14.) However, this total includes liabilities from Debtor's schedules, namely Debtor's business debt, the Credit Union One loan, the Home Depot #3921 debt, and the Sears credit card #2814 debt. *See In re Strickland*, 230 B.R. 276, 283-84 (Bankr. E.D. Va. 1999) (stating that "the Debtor's schedules are not persuasive, dispositive, or controlling on the question of the Debtor's insolvency at the time of the alleged preference" (citation omitted)); *see also Burdick v. Lee*, 256 B.R. 837, 841 (D. Mass. 2001) (same); *In re Mattingly*, No. 06-4095, 2007 WL 2229379, at *2-3 (Bankr. W.D. Ky. Aug. 1, 2007) (holding that a Trustee's reliance on the debtor's schedules is not sufficient to prove insolvency *on the date of the transfer* under § 547(b)(3) because the schedules only provide evidence of the debtor's financial condition on the date of the petition). If one excludes these liabilities, Debtor had total liabilities of $48,540.94 on the date of the Transfer; thus, Debtor would have been solvent. The problem is, of course, that we do not know what were Debtor's liabilities on the date of transfer.

A determination of insolvency under § 547 is a factual finding.  *See In re Oakes*, No. 92-3935, 1993 U.S. App. LEXIS 23078, at *1 (6th Cir. Sept. 3, 1993) (citing *Clay v. Traders Bank*, 708 F.2d 1347, 1350 (8th Cir. 1983)); *see also Orix Credit Alliance v. Harvey ex rel. Lamar Haddox Contractor (In re Lamar Haddox Contractor)*, 40 F.3d 118, 120 (5th Cir. 1994).  The bankruptcy court did not find as a matter of fact that Debtor was solvent on the date of the Transfer, and this Court will not usurp the bankruptcy court's fact-finding role.  Therefore, on remand, the bankruptcy court may also consider analyzing § 547(b)(3).

This Court expresses no opinion on whether, after considering all of the facts, the transfer is actually an avoidable preference under § 547.

**Conclusion**

The Court finds that the bankruptcy court's complete rejection of Debtor's schedules was clearly erroneous because the bankruptcy court did not provide any germane example of an incomplete, inaccurate, or invalid claim.  Accordingly, the Court vacates the bankruptcy court's prior rulings and remands this case to the bankruptcy court for further proceedings consistent with this Opinion.

An Order consistent with this Opinion will be entered.


Dated:  May 6, 2010                                     /s/ Gordon J. Quist
                                                              GORDON J. QUIST
                                          UNITED STATES DISTRICT JUDGE